U.S. v. Milagros Jeannette Rivera Gonzalez , 24-456 (SCC)

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| UNITED STATES OF AMERICA, <br> Plaintiff, <br><br> v. <br><br> **[33] Milagros Jeannette Rivera Gonzalez,** <br> Defendant. | CRIMINAL NO. 24-456(SCC) |



## PLEA AND FORFEITURE AGREEMENT

**TO THE HONORABLE COURT:**

The United States of America, Defendant, Milagros Jeannette Rivera Gonzalez , and Defendant's counsel, Leonardo Aldridge, Esq., pursuant to Federal Rule of Criminal Procedure 11, state that they have reached a Plea Agreement, the terms and conditions of which are as follows:

**1. Charges to which Defendant will Plead Guilty**

Defendant agrees to plead guilty to Count One of the Indictment:

<u>Count One</u>:  Beginning in or about 2020, and continuing until on or about the date of the return of the Indictment, in the District of Puerto Rico and within the jurisdiction of this Court, defendant and others did knowingly and willfully conspire, combine, confederate, and agree with each other and with other individuals known and unknown to the Grand Jury, to distribute and possess with intent to distribute controlled substances, to wit: a) 400 grams or more of a mixture or substance containing N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] propenamide (commonly



referred to as fentanyl), a Schedule II controlled substance; b) a detectable amount of a mixture or substance containing buprenorphine (commonly referred to as suboxone), a Schedule III controlled substance; c) one kilogram or more of a mixture or substance containing heroin, a Schedule I controlled substance; d) 500 grams or more of a mixture or substance containing a detectable amount of cocaine, a Schedule II controlled substance; e) a detectable amount of a mixture or substance containing marijuana, a Schedule I controlled substance; and f) a detectable amount of synthetic marijuana, a Schedule I controlled substance, in violation of 21 U.S.C. §§ 841(a)(), 841(b)d)(A), and 841(b)(1)(B). All in violation of 21 U.S.C. § 846.

## 2. Maximum Penalties

<u>Count One</u>: The maximum statutory penalty for the offense charged in Count One of the Indictment, is a term of imprisonment of 10 years or more than life; a fine not to exceed two hundred and fifty thousand dollars pursuant to 18 U.S.C. § 3571(b)(3); and a supervised release term of not more than five years, pursuant to 18 U.S.C. § 3583(b)(1).

Given that defendant is accepting responsibility for at least 4 G but less than 8 G of Fentanyl (N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] Propanamide), the maximum statutory penalty is term of imprisonment of not more than 20 years; a fine not to exceed two hundred and fifty thousand dollars pursuant to 18 U.S.C. § 3571(b)(3); and a supervised release term of not more than ~~five~~ three years, pursuant to 18 U.S.C. § 3583(b)(1).

### 3. Sentencing Guidelines Applicability

Defendant understands that the sentence will be imposed by the Court in accordance with 18 U.S.C. §§ 3551-86, and the United States Sentencing Guidelines (hereinafter "Guidelines"), which are advisory pursuant to the United States Supreme Court decision in *United States v. Booker*, 543 U.S. 220 (2005). Further, Defendant acknowledges that parole has been abolished, and that the imposition of Defendant's sentence may not be suspended.

### 4. Special Monetary Assessment



Defendant agrees to pay a special monetary assessment ("SMA") of one hundred dollars ($100.00) per count of conviction. The SMA will be deposited in the Crime Victim Fund, pursuant to 18 U.S.C. § 3013 (a)(2)(A).

### 5. Fines and Restitution

The Court may, pursuant to Section 5E1.2 of the Guidelines order Defendant to pay a fine. The Court may also impose restitution. Defendant agrees to execute and make available, prior to sentencing, a standardized financial statement (OBD Form 500). The United States will advocate on behalf of any identified victim, and comply with its obligations under the Mandatory Victim Restitution Act of 1996.

### 6. Sentence to be Determined by the Court

Defendant understands that the sentence to be imposed will be determined solely by the United States District Judge. The United States cannot make and has not made any promise or representation as to what sentence Defendant will receive. Any

discussions that the parties might have had about possible sentences are not binding in any way on the Court, and do not constitute representations about what the parties will seek, or what the actual sentence will be.

### 7. Recommended Sentencing Guidelines Calculations

After due consideration of the relevant factors enumerated in 18 U.S.C. § 3553(a), the United States and Defendant submit that the advisory Guidelines calculations listed below apply to Defendant. However, Defendant acknowledges that the Court is not required to accept those recommended Guidelines calculations.



| SENTENCING GUIDELINES CALCULATIONS<br>COUNT ONE<br>21 U.S.C. § 846 | |
|---|---|
| U.S.S.G. § 2D1.1 (a)(5)(c)(13) - At least 4 G but less than 8 G of Fentanyl (N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] Propanamide); | 14 |
| U.S.S.G. § 2D1.1(b)(4) - If the object of the offense was the distribution of a controlled substance in a prison, correctional facility, or detention facility | +2 |
| Acceptance of Responsibility pursuant to U.S.S.G. §3E1.1 | -3 |
| Downward Variance for Early Acceptance of Responsibility, thereby conserving valuable judicial and prosecutorial resources | -2 |
| **TOTAL ADJUSTED OFFENSE LEVEL** | **11** |

| CH Cat. I | CH Cat. II | CH Cat. III | CH Cat. IV | CH Cat. V | CH Cat. VI |
|---|---|---|---|---|---|
| 8–14 | 10–16 | 12–18 | 18–24 | 24–30 | 27–33 |

| U.S.S.G. § 4C1.1 - Adjustment for Certain Zero-Point Offenders (Should Defendant qualify for application of this guideline) | -2 |
|---|---|
| **TOTAL ADJUSTED OFFENSE LEVEL** | **9** |

| CH Cat. I | CH Cat. II | CH Cat. III | CH Cat. IV | CH Cat. V | CH Cat. VI |
|---|---|---|---|---|---|
| 4–10 | 6–12 | 8–14 | 12–18 | 18–24 | 21–27 |

## 8. Sentence Recommendation

As to Count One, and after due consideration of the relevant factors enumerated in 18 U.S.C. § 3553(a), the United States would recommend a sentence within the applicable guideline while Defendant will be allowed to argue for any legal sentence based on 18 U.S.C. § 3553(a) factors. The parties agree that any recommendation by either party for a term of imprisonment below or above the stipulated sentence recommendation will constitute a material breach of the Plea Agreement.

## 9. Downward Variance for Early Acceptance of Responsibility

The parties have agreed to recommend at sentencing that the Court grant a two-level downward variance from the applicable sentencing guidelines in recognition of the defendant's early acceptance of responsibility, which promotes the conservation of judicial and prosecutorial resources.

## 10. No Stipulation as to Criminal History Category

The parties do not stipulate as to any Criminal History Category for Defendant.

## 11. Waiver of Appeal

Defendant knowingly and voluntarily agrees that, if the sentence imposed by the Court is at the lower end of the applicable sentencing guideline, Defendant waives the right to appeal any aspect of this case's judgment and sentence, including, but not limited to the term of imprisonment or probation, restitution, fines, forfeiture, and the term and conditions of supervised release.

### 12. No Further Adjustments or Departures

The United States and Defendant agree that no further adjustments or departures to Defendant's total adjusted base offense level and no variant sentence under 18 U.S.C. § 3553—other than any explicitly provided for in this Plea Agreement—shall be sought by Defendant. The parties agree that any request by Defendant for an adjustment or departure that is not explicitly provided for in this Plea Agreement will be considered a material breach of this Plea Agreement, and the United States will be free to ask for any sentence, either guideline or statutory.

### 13. Satisfaction with Counsel

Defendant is satisfied with counsel, Leonardo Aldridge, Esq., and asserts that counsel has rendered effective legal assistance.



### 14. Rights Surrendered by Defendant Through Guilty Plea

Defendant understands that by entering into this Plea Agreement, Defendant surrenders and waives certain rights as detailed in this agreement. Defendant understands that the rights of criminal defendants include the following:

- a. If Defendant had persisted in a plea of not guilty to the charges, Defendant would have had the right to a speedy jury trial with the assistance of counsel. The trial may be conducted by a judge sitting without a jury if Defendant, the United States and the judge agree.

- b. If a jury trial is conducted, the jury would be composed of twelve lay persons selected at random. Defendant and Defendant's attorney would assist in selecting the jurors by removing prospective jurors for cause where actual bias or other disqualification is shown, or by removing prospective jurors without cause by exercising peremptory challenges. The jury would have to agree, unanimously, before it could return a verdict of either guilty or not guilty. The jury would be instructed that

Defendant is presumed innocent, that it could not convict Defendant unless, after hearing all the evidence, it was persuaded of Defendant's guilt beyond a reasonable doubt, and that it was to consider each charge separately.

c. If a trial is held by the judge without a jury, the judge would find the facts and, after hearing all the evidence and considering each count separately, determine whether or not the evidence established Defendant's guilt beyond a reasonable doubt.

d. At a trial, the United States would be required to present its witnesses and other evidence against Defendant. Defendant would be able to confront those witnesses and Defendant's attorney would be able to cross-examine them. In turn, Defendant could present witnesses and other evidence on Defendant's own behalf. If the witnesses for Defendant would not appear voluntarily, Defendant could require their attendance through the subpoena power of the Court.

e. At a trial, Defendant could rely on the privilege against self-incrimination to decline to testify, and no inference of guilt could be drawn from Defendant's refusal to testify. If Defendant desired to do so, Defendant could testify on Defendant's own behalf.



### 15. Stipulation of Facts

The accompanying Stipulation of Facts signed by Defendant is hereby incorporated into this Plea Agreement. Defendant adopts the Stipulation of Facts and agrees that the facts therein are accurate in every respect. Defendant agrees and accepts that had the matter proceeded to trial, the United States would have proven those facts beyond a reasonable doubt.

### 16. Limitations of Plea Agreement

This Plea Agreement binds only the United States Attorney's Office for the District of Puerto Rico and Defendant. It does not bind any other federal district, state, or local authorities.

### 17. Entirety of Plea Agreement

This written agreement constitutes the complete Plea Agreement between the United States, Defendant, and Defendant's counsel. The United States has made no promises or representations except as set forth in writing in this Plea Agreement and denies the existence of any other terms and conditions not stated herein.

### 18. Amendments to Plea Agreement

No other promises, terms or conditions will be entered into between the parties unless they are in writing and signed by all parties.

### 19. Dismissal of Remaining Counts

At sentencing should there be any pending counts and should the Defendant comply with the terms of this Plea Agreement, the United States will move to dismiss the remaining counts of the Indictment pending against Defendant in this case.

### 20. Voluntariness of Plea Agreement

Defendant acknowledges that no threats have been made against Defendant and that Defendant is pleading guilty freely and voluntarily because Defendant is guilty.

### 21. Breach and Waiver

Defendant agrees that defendant will have breached this Plea Agreement if, after entering into this Plea Agreement, Defendant: (a) fails to perform or to fulfill completely each and every one of Defendant's obligations under this Plea Agreement; (b) engages in any criminal activity prior to sentencing; or (c) attempts to withdraw Defendant's guilty plea. In the event of such a breach, the United States will be free

from its obligation under this Plea Agreement and Defendant will not have the right to withdraw the guilty plea. Moreover, Defendant agrees that if Defendant is in breach of the Plea Agreement, Defendant is deemed to have waived any objection to the reinstatement of any charges under the Indictment, Information, or complaint which may have previously been dismissed or which may have not been previously prosecuted.

## 22. Potential Impact on Immigration Status

Pursuant to Federal Rule of Criminal Procedure 11(b)(1)(O), Defendant hereby agrees and recognizes that if convicted, a Defendant who is not a United States citizen may be removed from the United States, denied citizenship, and denied admission to the United States in the future.

## 23. Felony Conviction

Defendant hereby agrees and recognizes that the plea of guilty in this case will be recognized as a felony conviction, which will result in the loss of certain rights, including but not limited to the right to vote in a federal election, to serve as a juror, to hold public office, and to lawfully possess a firearm.

## 24. Forfeiture Provision *(If applicable)*

Defendant agrees to waive and forgo any interests or claims over any property constituting, or derived from, proceeds obtained, directly or indirectly, as a result of such offenses and any property used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of the offense.

Defendant further agrees to waive all interest in any such asset in any administrative or judicial forfeiture proceeding, whether criminal or civil, state or federal. Defendant agrees to consent to the entry of orders of forfeiture for such property and waives the requirements of Federal Rules of Criminal Procedure 32.2 and 43(a) regarding notice of the forfeiture in the charging instrument, announcement of the forfeiture at sentencing, and incorporation of the forfeiture in the judgment. Defendant acknowledges that the forfeiture of assets is part of the sentence that may be imposed in this case and waives any failure by the court to advise Defendant of this, pursuant to Rule 11(b)(1)(J), at the time Defendant's guilty plea is accepted.



Defendant further agrees to waive all constitutional and statutory challenges in any manner (including direct appeal, habeas corpus, or any other means) to any forfeiture carried out in accordance with this Plea Agreement on any grounds, including that the forfeiture constitutes an excessive fine or punishment. Defendant agrees to take all steps as requested by the United States to pass clear title to forfeitable assets to the United States, and to testify truthfully in any judicial forfeiture proceeding. Defendant acknowledges that all property covered by this agreement is subject to forfeiture as proceeds of illegal conduct, giving rise to forfeiture and/or substitute assets for property otherwise subject to forfeiture.

Defendant, by agreeing to the forfeiture stated above, acknowledges that such forfeiture is not grossly disproportionate to the gravity of the offense conduct to which Defendant is pleading guilty. Defendant agrees that the forfeiture provisions of this Plea Agreement are intended to and will survive Defendant, notwithstanding the

abatement of any underlying criminal conviction after the execution of this agreement. The forfeitability of any particular property pursuant to this agreement shall be determined as if Defendant had survived, and that determination shall be binding upon Defendant's heirs, successors and assignees until the agreed forfeiture, including any agreed money judgment, is collected in full.

W. Stephen Muldrow
United States Attorney

_____
Timothy R. Henwood
Assistant U.S. Attorney
Criminal Chief
Dated: 1-28-26

_____
Leonardo Aldridge, Esq.
Counsel for Defendant
Dated: 1·28·26

_____
Myriam Y. Fernandez-Gonzalez
Assistant U.S. Attorney
Dated: 1-28-2026.

_____
Milagros Jeannette Rivera Gonzalez
Defendant
Dated: 1·28·26

U.S. v. Milagros Jeannette Rivera Gonzalez , 24-456 (SCC)

## UNDERSTANDING OF RIGHTS

I have consulted with counsel and fully understand all of my rights as to the charges pending against me. Further, I have consulted with my attorney and fully understand my rights as to the provisions of the Guidelines that may apply in my case. I have read this Plea Agreement and carefully reviewed every part of it with my attorney. My counsel has translated the Plea Agreement to me in the Spanish language and I have no doubts as to the contents of the agreement. I fully understand this agreement and voluntarily agree to it.

Date: 1.28.26

Milagros Jeannette Rivera Gonzalez
Defendant

I am the attorney for Defendant. I have fully explained Defendant's rights to Defendant with respect to the pending charges. Further, I have reviewed the applicable provisions of the Guidelines and I have fully explained to Defendant the provisions of those Guidelines that may apply in this case. I have carefully reviewed every part of this Plea Agreement with Defendant. I have translated the Plea Agreement and explained it in the Spanish language to the Defendant who has expressed having no doubts as to the contents of the agreement. To my knowledge, Defendant is entering into this Plea Agreement voluntarily, intelligently, and with full knowledge of all consequences of Defendant's plea of guilty.

Date: 1.28.26

Leonardo Aldridge, Esq.
Counsel for Defendant

## STIPULATION OF FACTS

In conjunction with the submission of the accompanying Plea Agreement in this case, the Defendant Milagros Jeannette Rivera Gonzalez admits that Defendant is guilty as charged in the Indictment and admits the following:

At trial the United States would show that beginning in or about 2020, and continuing until on or about the date of the return of the instant Indictment, the Group 31 Prison Gang (hereinafter "Group 31"), formally created in 1988 and whose members are known as Los Tiburones ("the Sharks"), controlled the distribution of illegal substances in several institutions operated by the Puerto Rico Department of Corrections and Rehabilitation, including a) Institución Correccional Guerrero, Aguadilla; b) Complejo Correccional Las Cucharas Sgto. Pedro Joel Rodriguez Matos, Ponce; c) Institución Correccional *Bayamon (*501); and d) Institución Correccional Guayama Máxima Seguridad (1000).

The evidence would show that Group 31 established and followed a leadership structure within the correctional institutions; and that to distribute illegal substances within the institutions, members of Group 31 relied on close associates in the free community to complete tasks essential to the enterprise. These tasks included, but were not limited to: a) purchasing the illegal substances distributed in the institutions; b) packaging the illegal substances distributed in the institutions; c) arranging for the smuggling of the illegal substances into the institutions through various methods; d)

collecting payments for the illegal substances; and e) conducting financial transactions to further the financial interests of the enterprise.

The evidence would show that Group 31 trafficked multiple illegal substances within the institutions they controlled, including but not limited to a) fentanyl; b) suboxone; c) heroin; d) cocaine; e) marijuana; and f) synthetic marijuana. Group 31 received its supply of narcotics from several sources, including members of other prison gangs (i.e. Los 25) who were housed in some of the same institutions as Group 31 members. Group 31 successfully smuggled the illegal substances into these institutions utilizing several methods. One of the principal smuggling methods involved using unmanned aerial vehicles (hereinafter "drones") that carried packages containing the illegal substances. In addition, Group 31 smuggled illegal substances into the institutions using, among others: a) legal mail; b) family visits; c) official corruption/indifference; d) catapulting or throwing drugs into the prison yards ("picheos"); and e) hiding drugs inside other items entered the prisons (i.e. PlayStations, remote controls, food items, and bags of ice).

Group 31 financed their enterprise through the sale and distribution of illegal substances within the institutions. Financial control and accounting for the enterprise was conducted by members of the organization in the free community, including Defendant. Payment for drug transactions generally did not occur within the institutions. Instead, members of the organization in the free community opened and maintained accounts in several banks and credit unions throughout Puerto Rico. Those members would send and receive payments for the illegal substances in cash, as

well as through Automated Clearinghouse Credits (electronic payments that move money from one account to another). As to Defendant, she would send payments for the purchase of controlled substances. Group 31 members benefited from a pattern of official corruption and/or indifference by employees in charge of the inmates; established its own disciplinary system within its ranks; communicated by means of contraband telephones and in writing; and maintained records to monitor the progress of the criminal enterprise.

As to Count One, the evidence would show that beginning in or about 2020, and continuing until on or about the date of the return of the instant Indictment, in the District of Puerto Rico and within the jurisdiction of this Court, defendant and others did knowingly and willfully conspire, combine, confederate, and agree with each other and with other individuals known and unknown to the Grand Jury, to distribute and possess with intent to distribute controlled substances, to wit: a) 400 grams or more of a mixture or substance containing N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] propenamide (commonly referred to as fentanyl), a Schedule II controlled substance; b) a detectable amount of a mixture or substance containing buprenorphine (commonly referred to as suboxone), a Schedule III controlled substance; c) one kilogram or more of a mixture or substance containing heroin, a Schedule I controlled substance; d) 500 grams or more of a mixture or substance containing a detectable amount of cocaine, a Schedule II controlled substance; e) a detectable amount of a mixture or substance containing marijuana, a Schedule I controlled substance; and f) a detectable amount of synthetic marijuana, a Schedule I controlled substance, in

violation of 21 U.S.C. §§ 841(a), 841(b)d)(A), and 841(b)(1)(B). All in violation of 21 U.S.C. § 846. For purposes of this plea agreement, the Defendant is held responsible for at least 4 G but less than 8 G of Fentanyl (N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] Propanamide.

Had this matter proceeded to trial, the United States would have presented evidence through the testimony of witnesses as well as physical evidence and documentary evidence, which would have proven beyond a reasonable doubt Defendant's guilt.

At trial, the United States would have proven beyond a reasonable doubt that defendant Milagros Jeannette Rivera Gonzalez is guilty as charged in Count One of the Indictment. Discovery was timely made available to Defendant for review.

_____
Myriam Y. Fernandez-Gonzalez
Assistant U.S. Attorney
Dated: 1-28-2026

_____
Leonardo Aldridge, Esq.
Counsel for Defendant
Dated: 1·28·26

_____
Milagros Jeannette Rivera Gonzalez
Defendant
Dated: 1·28·26